PEOPLE v WHITFIELD

Docket No. 72630. Argued December 17, 1985 (Calendar No. 7).
Decided May 29, 1986.

David Whitfield was convicted by a jury in the Recorder's Court
of Detroit, John Patrick O'Brien, J., of first-degree criminal
sexual conduct. The Court of Appeals, T. M. BURNS, P.J., and
V. J. BRENNAN, J. (WAHLS, J., dissenting), affirmed in an unpub-
lished opinion per curiam, holding that any error in precluding
the testimony of the defendant's expert that gonorrhea may be
transmitted by means other than sexual contact was harmless
(Docket No. 50012). The defendant appeals.

In an opinion by Justice BOYLE, joined by Chief Justice
WILLIAMS and Justices BRICKLEY and RILEY, the Supreme Court
*held:*

Refusal of the trial court to allow the defendant's expert to
testify concerning the transmission of gonorrhea by means
other than sexual contact was error requiring reversal.

1. An expert witness may testify where the trial court
determines that the proffered witness is qualified as an expert
by knowledge, skill, experience, training, or education and that
the expert's testimony will assist the trier of fact. The determi-
nation whether a witness is an expert is within the discretion
of the trial court and generally is not reversed on appeal
absent an abuse of discretion. In this case, the testimony of the
defendant's expert concerning the transmission of gonorrhea
was clearly of potential assistance to the trier of fact in

REFERENCES

Am Jur 2d, Evidence §§ 267, 341.
Am Jur 2d, Expert and Opinion Evidence §§ 16, 27, 37, 38, 103, 181,
185.
Am Jur 2d, Witnesses §§ 471-506.
When is evidence of trait of accused's character "pertinent" for
purposes of admissibility under Rule 404(a)(1) of the Federal
Rules of Evidence. 49 ALR Fed 478.
Construction and application of provision of Rule 611(b) of Federal
Rules of Evidence that cross-examination should be limited to
subject matter of direct examination. 45 ALR Fed 639.
Cross-examination of character witness for accused with reference
to particular acts or crimes—modern state rules. 13 ALR4th 796.

understanding the evidence presented. In addition, the expert was clearly qualified by knowledge, experience, and training to testify concerning such transmission. While his expertise might not have been as great as that of the prosecution's experts, such a consideration affects the weight of the evidence, not its admissibility, and was for the jury to decide.

2. Failure to permit the defendant's expert to testify was error. Because of the circumstances of the case and the nature of the excluded testimony, it cannot be said that the error was harmless beyond a reasonable doubt. First-degree criminal sexual conduct, as charged in this case, requires proof of sexual penetration with a person under thirteen years of age. The alleged victim was found not competent to testify. A critical component of the prosecution's proofs on penetration was expert testimony that gonorrhea is only transmitted by sexual activity. The limited physical evidence of penetration, given the child's intact hymen, was a circumstance which could have raised a doubt in the mind of a reasonable factfinder. Therefore, the testimony of the defendant's expert was crucial to his theory and, if believed, might have affected the jury's verdict. The prosecution's proofs, although circumstantial, were strong, but it cannot be said that they were so compelling that the error in failing to permit the defendant's expert to testify was so insignificant as to be deemed harmless.

3. At retrial, upon motion in limine and offer of proof by the defense as to the nature of proposed character evidence, the trial court must rule in advance of trial whether the impeachment by inquiry into the defendant's unconvicted bad acts will be permitted, so as to allow defense counsel to make a discriminating choice on the use of character witnesses and the appropriate scope of questioning. In ruling on the motion, the trial court should consider whether the probative value of the line of cross-examination is substantially outweighed by its prejudicial effect, the likelihood that any alleged misconduct by the defendant would have been known and discussed in the community so as to affect the character witness' knowledge of the defendant's reputation, the basis for the prosecution's belief that the misconduct occurred, and the temporal relationship between the misconduct and the offense charged. Once the court has ruled on the use of the questioning, the court should exercise discretion over the mode and order of interrogating witnesses to ensure fair treatment. Assuming that the questioning is held to be proper, the court should, upon request, issue cautionary instructions to the jury concerning the limited purpose of the impeaching questions.

4. Evidence of penetration presented by the prosecution was

sufficient to survive a motion for a directed verdict. The age of the victim was not disputed, and the evidence, if believed by the jury, was sufficient to establish that penetration was committed by the defendant.

Justice LEVIN, joined by Justice CAVANAGH, concurring, stated that unsolicited testimony touching on the general reputation of a defendant by a defense witness being questioned about the defendant's reputation for truthfulness under MRE 608 does not automatically open up an unlimited range of cross-examination under MRE 404(a)(1) and 405. In this case, there was no justification under MRE 608 for allowing the prosecutor's rebuttal of the defense witness' unsolicited testimony by questioning the witness concerning how the defendant's alleged sodomizing of his five-year-old cousin would affect the witness' opinion of the defendant. The alleged misconduct is not probative of truthfulness or untruthfulness. The proper judicial response to the witness' unresponsive statements was to strike the statements and caution the jury.

Reversed.

Justice ARCHER took no part in the decision of this case.

### OPINION OF THE COURT

1. EVIDENCE — EXPERT TESTIMONY — FIRST-DEGREE CRIMINAL SEXUAL CONDUCT — ERROR.

   Refusal of a trial court in a prosecution for first-degree criminal sexual conduct involving a person under thirteen years of age to admit testimony by the defendant's expert concerning the transmission of gonorrhea, where the testimony was clearly of potential assistance to the trier of fact in understanding the evidence presented and the proffered expert was clearly qualified by knowledge, experience, and training to testify, was error requiring reversal (MCL 750.520b[1][a]; MSA 28.788[2][1][a]; MRE 702).

2. EVIDENCE — CHARACTER EVIDENCE — SCOPE OF CROSS-EXAMINATION.

   A trial court, upon motion in limine and offer of proof by the defense as to the nature of proposed character evidence, must rule in advance of trial, where time allows, whether impeachment of character witnesses by inquiry into specified unconvicted bad acts of the defendant, will be permitted, so as to allow defense counsel a discriminating choice on the use of character witnesses and the appropriate scope of questioning; in ruling on the motion, the trial court should consider whether

the probative value of the line of cross-examination is substantially outweighed by its prejudicial effect, the likelihood that any alleged misconduct by the defendant would have been known and discussed in the community so as to affect the character witness' knowledge of the defendant's reputation, the basis for the prosecution's belief that the misconduct occurred, and the temporal relationship between the misconduct and the offense charged (MRE 403, 404[a], 405[a]).

CONCURRING OPINION BY LEVIN, J.

3. EVIDENCE — CHARACTER EVIDENCE — UNSOLICITED TESTIMONY — SCOPE OF CROSS-EXAMINATION.

*Unsolicited testimony touching on the general reputation of a defendant by a defense witness being questioned about the defendant's reputation for truthfulness does not automatically open up an unlimited range of cross-examination; where such a witness offers unsolicited testimony, the proper judicial response is to strike the witness' statements and caution the jury (MRE 404[a][1], 405, 608).*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Deputy Chief, Civil and Appeals, and *Thomas M. Chambers,* Assistant Prosecuting Attorney, for the people.

*Sheldon Halpern* for the defendant.

BOYLE, J. David Whitfield was charged and ultimately convicted of first-degree criminal sexual conduct, MCL 750.520b(1)(a); MSA 28.788(2)(1)(a). Mr. Whitfield's first trial ended in a mistrial because the jury could not agree on a verdict. A second trial resulted in the conviction challenged in the instant appeal. A divided Court of Appeals panel affirmed the conviction in a per curiam opinion. This appeal followed. Because we agree that prejudicial error occurred in Mr. Whitfield's second trial, we reverse the conviction.

## I

### FACTS

The basic facts are ably set out in Judge WAHL's partial dissent to the Court of Appeals opinion:

[A. M.], a 3-year-old girl, lived with her mother, [C. M.], and defendant. On July 28, 1978, [A. M.'s grandmother] picked up the child for a weekend visit. When bathing the child, her grandmother observed bruises on her thighs and buttocks, and sores and redness on her genitalia. The victim was taken to the hospital where doctors determined she had gonorrhea. Subsequent examination of defendant and [C. M.] revealed both also had the disease.

At trial the emergency room pediatrician at Children's Hospital testified that, in her opinion, the bruises on the child's genitalia were due to a sexual assault. On cross-examination, she indicated other trauma could have caused the injuries, such as a fall while standing on the toilet. The doctor also testified that the child was infected with gonorrhea at least three but not more than 30 days prior to examination, and that such infection could occur only upon contact with the genitalia of an individual who had the disease.

Defendant was examined by Dr. Thomas Chapel, a dermatologist and Director of the Social Hygiene Clinic in Detroit, and determined to have gonorrhea. The doctor testified that a few articles on the subject imply that gonorrhea may be transmitted non-sexually, but that it has never been proven. He indicated that it was highly unlikely but not totally impossible, for gonorrhea to be transmitted by two people using the same washcloth.

Dr. Adnan Dajani, author of two papers on gonorrhea in children, testified that non-venereal transmission of gonorrhea has been postulated but never proven; he knew of no case where gonorrhea was transmitted in a pre-pubertal child by means other than sexual contact.

It was defendant's contention at trial that the child contracted the disease either by physical contact with her mother on occasions when she and the child slept unclothed together or bathed together, or contact with a washcloth the mother had also used. Defendant contended the child suffered the bruising when straddling a chair or similar object when falling.

At both trials, the defendant offered the expert testimony of Dr. Samuel Lerman on the question whether gonorrhea can be transmitted in a nonsexual manner. At defendant's first trial, Dr. Lerman testified that gonorrhea can be transmitted without sexual contact, although such transmission is uncommon. Dr. Lerman also said that gonorrhea could be transmitted by a wet towel or washcloth or by one person sitting on a damp surface that an infected person had just sat on. At defendant's second trial, the trial court ruled that Dr..Lerman lacked the expertise needed to qualify as an expert on the transmission of gonorrhea.

## II

### QUALIFICATION OF EXPERT WITNESSES

On appeal, appellant asserts that the trial court erred in refusing to allow Dr. Lerman's testimony and that the error cannot be considered harmless. We agree.

Michigan Rule of Evidence 702 provides:

If the court determines that recognized scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Under MRE 702, the trial court determines whether expert testimony will assist the trier of fact. The trial court also determines whether the proffered witness is "qualified as an expert by knowledge, skill, experience, training, or education." MRE 702; MRE 104(a). The determination of whether a witness is an "expert" is within the discretion of the trial court, *Siirila v Barrios,* 398 Mich 576, 591; 248 NW2d 171 (1976), and the decision generally is not reversed on appeal absent an abuse of discretion.

In this case, expert testimony concerning the transmission of gonorrhea was clearly of potential assistance in understanding the evidence. Several physicians called by the prosecution testified, on direct and cross-examination, concerning the transmission of gonorrhea. Thus, the initial issue here is whether the trial court erred in the decision that defendant's witness, Dr. Lerman, could not testify concerning the transmission of gonorrhea.

Dr. Lerman's qualifications are summarized in Judge WAHL's dissent:

Dr. Lerman was a board certified family practitioner. From 1974 to 1977, he was an assistant professor of family medicine. At the time of trial he maintained a private practice and worked part-time as a general practitioner with the Detroit Health Department. As a family practitioner he had treated cases of gonorrhea. Dr. Lerman had read at least 20 journal articles, plus the usual text, with regard to gonorrhea and its transmission, and had attended seminars in which the subject was discussed. He had examined one three-year old with gonorrhea, and had read material on about 20 such cases.

Under MRE 702, a witness can be an "expert"

due to "knowledge, skill, experience, training, or education." The federal advisory committee note to Federal Rule of Evidence 702, upon which MRE 702 was modeled, observes:

> The rule is broadly phrased. The fields of knowledge which may be drawn upon are not limited merely to the "scientific" and "technical" but extend to all "specialized" knowledge. Similarly, the expert is viewed, not in a narrow sense, but as a person qualified by "knowledge, skill, experience, training or education." Thus within the scope of the rule are not only experts in the strictest sense of the word, e.g. physicians, physicists, and architects, but also the large group sometimes called "skilled" witnesses, such as bankers or landowners testifying to land values.

Commenting on FRE 702, the Sixth Circuit Court of Appeals observed that "a proposed expert witness 'should not be required to satisfy an overly narrow test of his own qualifications.' " *United States v Barker,* 553 F2d 1013, 1024 (CA 6, 1977) (citations omitted).

The same is true of expert witnesses under MRE 702. While the trial court has considerable discretion in determining whether an individual may testify as an expert, *United States v Crosby,* 713 F2d 1066 (CA 5, 1983), a proposed expert should not be scrutinized by an overly narrow test of qualifications. Dr. Lerman was clearly qualified by knowledge, experience, and training to testify concerning the transmission of gonorrhea. He had treated patients with gonorrhea, including one three-year-old child, and he was familiar with the literature on the subject. While Dr. Lerman's expertise might not have been as great as the prosecutor's experts, such a consideration goes to the weight of the evidence rather than the admissibil-

ity. It is for the jury to decide what weight to give to the evidence. *People v Goodrode,* 132 Mich 542, 548; 94 NW 14 (1903). As Judge McCree noted in *Barker, supra,*

> Nor need [the expert] be, as the trial court apparently required, an outstanding practitioner in the field in which he professes expertise. Comparisons between his professional stature and the stature of witnesses for an opposing party may be made by the jury, if it becomes necessary to decide which of the conflicting opinions to believe. But the only question for the trial judge who must decide whether or not to allow the jury to consider a proffered expert's opinion is, "whether his knowledge of the subject matter is such that his opinion will most likely assist the trier of fact in arriving at the truth." [*Id.* at 1024. Citations omitted.]

Dr. Lerman's testimony concerning the transmission of gonorrhea should have been admitted under MRE 702.

Because of the circumstances of this case and the nature of the testimony excluded, we cannot say that this error was harmless beyond a reasonable doubt. *Chapman v California,* 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967).[1]

---

[1] The defense asserts, and the prosecution does not dispute, that the error in this case violated the defendant's federal constitutional right to present a defense. Some cases find this right in the fundamental fairness required by the Due Process Clause, *Chambers v Mississippi,* 410 US 284; 93 S Ct 1038; 35 L Ed 2d 297 (1973). Other cases rely upon the Confrontation and Compulsory Process Clauses of the Sixth Amendment to the United States Constitution, *Washington v Texas,* 388 US 14; 87 S Ct 1920; 18 L Ed 2d 1019 (1967). In *People v Hackett,* 421 Mich 338, 353; 365 NW2d 120 (1984), we found that the Confrontation Clause requires a reasonable opportunity to present evidence, by cross-examining the complainant and by presenting witnesses for the defense, supporting the defendant's theory.

While the source of the federal right to present a defense is not clearly delineated, both the Compulsory Process Clause and the Confrontation Clause contribute to the right. In *Washington v Texas, supra* at 19, the Court explained:

In the context of a Confrontation Clause violation, consisting of improper limitation of cross-examination of a prosecution witness for bias, the United States Supreme Court recently reaffirmed its rejection of automatic reversal for error of constitutional magnitude and reviewed some of the factors a reviewing court should consider in determining whether a constitutional error can be considered harmless:

> The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. [*Delaware v Van Arsdall*, 475 US —; 106 S Ct 1431; 89 L Ed 2d 674, 686-687 (1986).]

The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense.

See also Westen, *Confrontation and compulsory process: A unified theory of evidence for criminal cases,* 91 Harv L R 567, 625 (1978).

We apply the harmless error standard set forth in *Chapman v California,* 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967), because we agree that a federal constitutional right was violated in this case. Since the error here is of constitutional magnitude, we do not address the appropriate standard of review of evidentiary error which is not of constitutional magnitude.

Mr. Whitfield was convicted of first-degree crimi-
nal sexual conduct (CSC I). MCL 750.520b(1)(a);
MSA 28.788(2)(1)(a) defines this offense as follows:

(1) A person is guilty of criminal sexual conduct
in the first degree if he or she engages in sexual
penetration with another person and if any of the
following circumstances exists:
(a) That other person is under 13 years of age.

CSC I thus requires proof of sexual penetration.[2]
Not surprisingly, the child victim in this case,
barely more than an infant, was found not compe-
tent to testify. Thus, a critical component of the
prosecutor's proofs on penetration was the expert
testimony that gonorrhea is only transmitted by
sexual activity. The other evidence of penetration
was bruising within the folds of the child's exter-
nal genitalia, characterized as a sexual bruise by
the examining physician, and the child's statement
to her grandmother that the defendant had hurt
her bottom. The victim's mother testified that the
defendant had whipped the child the night before
she allegedly made this statement, and the exam-
ining physician testified that the bruising was also
consistent with falling off a chair or toilet. The
child had an intact hymen and there was no other
physical evidence, such as internal tearing, ruptur-
ing, or bleeding, of penetration. While the prosecu-
tion's expert hypothesized that gonorrhea could be
sexually transmitted by contact with seepage from
an infected penis and the child's external vaginal

[2] MCL 750.520a(1); MSA 28.788(1)(1) provides:

"Sexual penetration" means sexual intercourse, cunnilingus,
fellatio, anal intercourse, or any other intrusion, however
slight, of any part of a person's body or of any object into the
genital or anal openings of another person's body, but emission
of semen is not required.

area, the limited physical evidence of penetration, given the fact that the hymen was intact, was a circumstance which could have raised a doubt in the mind of a reasonable factfinder.

Dr. Lerman's testimony was therefore crucial to the defense theory and, if believed, might have affected the jury's verdict. The prosecutor argues that any error was harmless because the prosecution's expert testified, on cross-examination, that gonorrhea could be transmitted by contact rather than by penetration and that there was literature claiming that nonsexual transmission had occurred.[3] While it is true that the prosecution's expert reluctantly conceded that nonsexual transmission was possible, a fair reading of the transcripts of both trials discloses that the prosecution's witness was much more willing to discredit such a viewpoint than was Dr. Lerman. In the defense offer of proof, Dr. Lerman indicated that he would testify that gonorrhea could be transmitted by nonsexual means in one out of four cases. The prosecution's proofs, although circumstantial, were strong. We are unable to say however that they were so compelling that the error was "so unimportant and insignificant that [it] may, consistent with the Federal Constitution, be deemed harmless . . . ." *Chapman v California, supra* at 22. Since it is impossible for this Court to conclude that not even one juror would have been able to find reasonable doubt from the reluctant testimony of the prosecution witness plus the affirmative testimony of Dr. Lerman concerning the nonsexual

---

[3] One of the prosecutor's arguments against allowing Dr. Lerman to testify concerning the transmission of gonorrhea was that Dr. Lerman's basis for knowledge was primarily medical literature which any layman could also read. Since the prosecution expert's testimony on nonsexual transmission was also based upon the medical literature, it is inconsistent for the state to now argue that their expert's testimony was sufficient.

transmission of gonorrhea, we reverse Mr. Whit-
field's conviction.

### III

### IMPEACHMENT BY INQUIRY INTO UNCONVICTED BAD ACTS

Mr. Whitfield also asserts in this appeal that the
prosecution's cross-examination of a character wit-
ness for the defense, the Reverend Mr. Frank
Barnes, resulted in prejudicial error requiring re-
versal. While we need not rule upon whether this
questioning requires reversal in this case, it is
appropriate to set forth guidelines for the use of
such evidence because this issue may arise on
retrial.

On direct examination, Mr. Barnes testified that
he had known Mr. Whitfield all his life and that
Mr. Whitfield had been involved in church activi-
ties, particularly musical activities. Mr. Barnes
also testified that Mr. Whitfield had a good reputa-
tion in the community for truth and veracity, and
that he was considered "as a wonderful person, as
a good boy or good person."[4] On cross-examination,

---

[4] The relevant portions of Mr. Barnes' testimony is as follows:

*Q.* Okay. Would you know the defendant's reputation in the
community?
*A.* Yes.
*Q.* Could you tell us what the defendant's reputation in the
community is?
*A.* It is good.
*Q.* Is he known in the community for speaking the truth?

* * *

*A.* Yes.

* * *

*Q.* Have you, Mr. Barnes, known about the reputation of Mr.
Whitfield in the community for truth and veracity?
*A.* Yes.
*Q.* Could you relate to us what that would be?

the prosecution asked the following question:

> Reverend Barnes, would your opinion regarding Mr. Whitfield be the same had you heard that some seven years ago Mr. Whitfield had committed a sexual assault on his then five-year-old male cousin . . . ?

Defense counsel objected on the basis of lack of evidence and lack of notice. The trial court overruled the objection and allowed the question.

Both the value and the wisdom of presenting character evidence have been doubted. It is thought that such evidence typically adds little of relevance to the determination of the actual issues in a case and is likely to inject extraneous elements.[5] Thus, the prosecution in a criminal trial is

---

A. It is good. People that communicate with him and that know him, they speak very highly of him as a wonderful person, as a good boy or good person.

[5] McCormick, Evidence (3d ed), § 188, p 554, observes:

> Yet, evidence of character in any form—reputation, opinion from observation, or specific acts—generally will not be received to prove that a person engaged in certain conduct or did so with a particular intent on a specific occasion, so-called circumstantial use of character. The reason is the familiar one of prejudice outweighing probative value. Character evidence used for this purpose, while typically being of relatively slight value, usually is laden with the dangerous baggage of prejudice, distraction, time consumption and surprise.

Other commentators express the basis for the general rule of exclusion as follows:

> The rule is justified primarily on the ground that the probative value of propensity evidence is outweighed by its prejudicial effect on a jury. The introduction of such evidence is said to create a danger that the jury will punish the defendant for offenses other than those charged, or at least that it will convict when unsure of guilt, because it is convinced that the defendant is a bad man deserving of punishment. [2 Weinstein, Evidence, ¶ 404[04], p 404-29 (quoting Note: *Procedural protec-*

generally barred from the circumstantial use of bad character to prove that the defendant committed the crime charged.[6] One of the exceptions to the general rule barring the use of character to prove conformance therewith on a particular occasion is the so-called "mercy rule" found in MRE 404(a)(1), which allows a criminal defendant an absolute right to introduce evidence of his character to prove that he could not have committed the crime.[7] MRE 404(a)(1) allows the introduction of "[e]vidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same." The latter part of MRE 404(a)(1) is the source of the doubt about the wisdom of presenting character evidence as part of an accused's defense: Once a defendant introduces character testimony, the prosecution can then rebut that testimony.[8] Under MRE 405(a),[9] the accused can only present favorable character evidence in the form of reputation testimony. However, MRE 405(a) permits the prosecution's rebuttal to be done either by cross-

_____

*tions of the criminal defendant—A reevaluation of the privilege against self-incrimination and the rule excluding evidence of propensity to commit crime,* 78 Harv L R 426, 436 [1964]).]

[6] MRE 404(a) provides:

Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion . . . .

[7] The notion that a criminal defendant should have the right to present favorable character testimony has been generally adopted by American jurisprudence. See McCormick, n 5 *supra;* FRE 404(a)(1).

[8] See generally McCormick, n 5 *supra* at 568-570; 2 Weinstein, Evidence, ¶ 404[05], pp 404-41 to 404-48.

[9] MRE 405(a) provides:

In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation. On cross-examination, inquiry is allowable into reports of relevant specific instances of conduct.

examining defense character witnesses concerning reports of specific instances of conduct,[10] or by presenting witnesses who testify to the bad reputation of the defendant. *People v Champion,* 411 Mich 468; 307 NW2d 681 (1981). A witness questioned concerning the defendant's character for truth and veracity may well slip into a general discourse on the defendant's character, as Mr. Barnes did in the instant case, thus opening up the range of rebuttal allowed to the prosecution under MRE 404(a)(1).[11] A character witness for the defense may thus unwittingly furnish the foundation for the prosecutor to acquaint the jury with matters which otherwise could not be admitted into evidence.

Even where a character witness gives unrestrained responses on direct examination, the trial court must ensure some degree of restraint in the impeachment of character witnesses with questions concerning other alleged misconduct of a defendant. The valid purpose of such impeachment is to test the credibility of the character witness by challenging the witness' good faith, information,

---

[10] The Federal Advisory Committee note to FRE 405 observes:

> Of the three methods of proving character provided by the rule, evidence of specific instances of conduct is the most convincing. At the same time it possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time.

[11] Under MRE 608, a witness' character for truthfulness can be attacked by reputation evidence, credibility of a witness always being material. Once a witness' character for truthfulness has been attacked, reputation testimony supporting truthfulness can be admitted. Upon cross-examination, inquiry about specific acts probative of truthfulness or untruthfulness of the witness or of the person for whose character the witness has vouched is permitted. MRE 608(b).

We need not consider the extent to which rebuttal under MRE 404(a)(1) must be limited by the nature of the character testimony presented by the defendant because Mr. Barnes testified concerning the defendant's general reputation in the community.

and accuracy.[12] However, the danger of such impeachment is similar to the dangers of admitting evidence of similar bad acts as a part of the prosecution's case in chief: the possibility of inflaming and prejudicing the jury,[13] and diverting the jury from unbiased evaluation of guilt or innocence of the charged offense.[14] While the danger presented by cross-examination of a character witness is not as great as direct evidence presented as part of the prosecution's case in chief,[15] the potential for unfair prejudice is sufficiently great to require protective procedures.[16]

[12] In *Michelson v United States,* 335 US 469, 479; 69 S Ct 213; 93 L Ed 168 (1948), the United States Supreme Court observed that "while the law gives defendant the option to show as a fact that his reputation reflects a life and habit incompatible with commission of the offense charged, it subjects his proof to tests of credibility designed to prevent him from profiting by a mere parade of partisans."

[13] See *People v Golochowicz,* 413 Mich 298; 319 NW2d 518 (1982). See also n 5.

[14] *People v DerMartzex,* 390 Mich 410, 413; 213 NW2d 97 (1973).

[15] In recognition of the dangers inherent in admitting evidence of similar bad acts, this Court adopted strict standards for admitting such evidence under MRE 404(b) to prove identity. *People v Golochowicz,* n 13 *supra.* In *Golochowicz,* this Court observed:

>    But this case presents the classic example as to why trial courts should be
>
>    "stricter in applying [the] standards of relevancy when the ultimate purpose of the [evidence] is to prove identity or the doing by the accused of the criminal act charged than they are when the evidence is offered on the ultimate issue of knowledge, intent or other state of mind." McCormick, Evidence (2d ed), § 190, p 452.
>
>                         *   *   *
>
>    It is, at least in part, for those reasons that the trial court, when similar-acts evidence is offered to prove *identity,* should insist upon a showing of a high degree of similarity in the manner in which the crime in issue and the other crimes were committed. [*Id.* at 324-325. Emphasis in original.]

We decline to apply the *Golochowicz* standard to cross-examination of character witnesses under MRE 404(a).

[16] The dangers and the need for restriction are well-recognized by commentators. McCormick, n 5 *supra* at 569-570, suggests:

At retrial, upon motion in limine and offer of proof by the defense as to the nature of the proposed character testimony, the trial court must rule in advance of trial, where time allows, whether impeachment of the character witnesses by inquiry into specified unconvicted bad acts of the defendant will be permitted. This procedure will allow defense counsel to make a discriminating choice of the use of character witnesses and the appropriate scope of questioning.[17]

In ruling on the motion, among the factors the trial court should consider are whether the probative value of the line of questioning is substantially outweighed by the prejudicial effect under MRE 403, the likelihood that the alleged misconduct would have been known and discussed in the community so as to affect the witness' knowledge of the defendant's reputation, the basis for the prosecution's belief that the event being inquired about occurred, and the temporal relationship be-

This power of the cross-examiner to reopen old wounds is replete with possibilities for prejudice. Accordingly, certain limitations should be observed. The general responsibility of trial courts to weigh probative value against prejudice does not vanish because reference to other crimes or wrongs takes the form of insinuation or innuendo rather than concrete evidence. The extent and nature of the cross-examination demands restraint and supervision. Some questions that less experienced prosecutors could be tempted to ask may be improper under any circumstances. As a precondition to cross-examination about other wrongs, the prosecutor should reveal, outside the hearing of the jury, what his basis is for believing in the rumors or incidents he proposes to ask about. The court should then determine whether there is a substantial basis for cross-examination. [Citations omitted.]

[17] We note that under the recently proposed rules of criminal procedure, MCR 6.202(3) requires the prosecutor to disclose lists of intended witnesses, their written statements, and memoranda summarizing their oral statements. 422A Mich 69. Proposed MCR 6.205(2) imposes a reciprocal duty to disclose on the defense. Proposed MCR 6.209 imposes a continuing duty to disclose witness names and statements. 422A Mich 91.

tween the misconduct in question and the offense charged.[18]

Once the trial court has ruled on the use of the questioning, the court should exercise its discretion under MRE 611 over the mode and order of interrogating witnesses to ensure fair treatment of the issue, including efforts to ensure that the direct and cross-examination will be conducted in proper form. Assuming the questioning is held to be proper, the court should, upon request, issue cautionary instructions to the jury concerning the limited purpose of the impeaching questions.[19]

IV

SUFFICIENCY OF THE EVIDENCE

Mr. Whitfield also argues there was insufficient evidence of penetration to survive the defense motion for directed verdict. We disagree.

When ruling on a motion for directed verdict of acquittal, the trial judge must determine whether, considering the evidence in a light most favorable to the nonmoving party, a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979). In this case, the essential elements were sexual penetration and the age of the alleged victim. MCL 750.520b(1)(a); MSA 28.788(2)(1)(a). Sexual penetration is defined in MCL 750.520a(l); MSA 28.788(1)(l) as:

---

[18] See generally Anno: *Cross-examination of character witness for accused with reference to particular acts or crimes—Modern state rules,* 13 ALR4th 796.

[19] We note that the trial court in this case gave excellent instructions concerning the limited purpose of the question posed to Mr. Barnes.

"Sexual penetration" means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required.

The age of the victim was not disputed. The evidence presented by the prosecution, if believed by the jury, was sufficient to establish that penetration[20] was committed by the defendant. The defendant regularly babysat for the victim during the relevant time period; both the defendant and the victim had gonorrhea; prosecution doctors testified that gonorrhea was only transmitted, in their experience, through sexual contact; the child had bruising, characterized as sexual bruises by the examining physician, on the "inner aspect of the labia majora of the large folds of the external genitalia"; and the child told her grandmother that Mr. Whitfield had "hurt her bottom." The evidence here was sufficient to present the question of Mr. Whitfield's guilt to the jury.

[20] In *People v Bristol*, 115 Mich App 236; 320 NW2d 229 (1981), the Court of Appeals considered whether bruising of the labia majora, without other physical evidence, was sufficient to show penetration despite the child victim's intact hymen. We agree with the reasoning of the *Bristol* panel:

One object of the Legislature in providing for degrees of criminal sexual conduct was to differentiate between sexual acts which affected only the body surfaces of the victim and those which involved intrusion into the body cavities, in the instant case the female "genital opening." In view of the fact that the penetration of the labia majora is beyond the body surface, a definition of the female genital opening that excluded the labia would be inconsistent with the ordinary meaning of female genital openings. The fact that the Legislature used "genital opening" rather than "vagina" indicates an intent to include the labia. Such a definition is also consistent with that in most other jurisdictions. See 76 ALR3d 163, § 3, p 178. [*Id.* at 238.]

## V

### CONCLUSION

Mr. Whitfield alleges several other instances of error in the record below. The Court of Appeals ably and correctly determined that there was no validity in these other alleged errors. In particular, we agree with the Court of Appeals view that "[t]he trial court did not err in permitting the examining physician to give an opinion as to whether the victim's injuries were caused by a sexual assault. An expert is not prohibited from testifying to an ultimate fact in issue. MRE 704."

The conviction in this case must be overturned because of prejudicial error which occurred when the trial judge failed to allow Mr. Whitfield's expert witness to testify concerning the transmission of gonorrhea. Accordingly, the decision of the Court of Appeals is reversed.

Williams, C.J., and Brickley and Riley, JJ., concurred with Boyle, J.

Levin, J. I concur with the following observations. The opinion of the Court states that a "witness questioned concerning the defendant's character for truth and veracity may well slip into a general discourse on the defendant's character, as Mr. Barnes did in the instant case, thus opening up the range of rebuttal allowed to the prosecution under MRE 404(a)(1)."[1] A footnote refers to MRE 608, which states that the credibility of a witness for truthfulness "may be attacked or supported by evidence of reputation." The footnote continues: "Upon cross-examination, inquiry about specific acts probative of truthfulness or untruthfulness of the witness or of the person for whose character

[1] *Ante,* p 131.

the witness has vouched is permitted." The footnote concludes: "We need not consider the extent to which rebuttal under MRE 404(a)(1) must be limited by the nature of the character testimony presented by the defendant because Mr. Barnes testified concerning the defendant's general reputation in the community."

I write separately because (1) the record indicates that at trial the focus was only on MRE 608 and not on MRE 404(a)(1), and (2) Mr. Barnes' unsolicited comments touching on the defendant's general reputation in response to a question about his reputation for veracity did not, as a matter of law, open up an unlimited range of cross-examination under MRE 404(a)(1).

The record indicates that at first the exchange between defense counsel and Barnes might have appeared to concern Whitfield's general reputation: "*Q.* Could you tell us what the defendant's reputation in the community is?" "*A.* It is good." But it immediately became clear that the inquiry was limited to reputation for truthfulness:

*Q.* Is he known in the community for speaking the truth?

\* \* \*

*A.* Yes.

\* \* \*

*Q.* Have you, Mr. Barnes known about the reputation of Mr. Whitfield in the community for truth and veracity?

*A.* Yes.

*Q.* Could you relate to us what that would be?

*A.* It is good. People that communicate with him and that know him, they speak very highly of him as a wonderful person, as a good boy or good person. He has taken part in a number of community activities. For instance his brother Thomas . . .

At this point, the prosecutor objected on the grounds that "the rule, 608, does have this type of testimony. I think we are going beyond the limits of Rule 608." Since the objection was based on MRE 608,[2] and MRE 608 is limited to reputation for truthfulness, there was no justification under MRE 608 for allowing the prosecutor's rebuttal concerning the defendant's alleged sodomizing of his five-year-old cousin. The alleged misconduct is not probative of truthfulness or untruthfulness. *People v Mitchell*, 402 Mich 506, 515; 265 NW2d 163 (1978). The proper judicial response was to strike Barnes' additional comments which could be seen as having wandered into Whitfield's general reputation.

The opinion ignores that the focus at the trial was whether the cross-examination was admissible under MRE 608, not whether it was admissible under MRE 404(a)(1).[3]

The trial judge and counsel for both the defen-

---

[2] That the issue was framed in terms of MRE 608 became even clearer during cross-examination. When the prosecutor attempted to ask Barnes about the alleged prior incident of sexual assault on a child, defense counsel objected, and the jury was excused. The trial judge then asked the prosecutor what question he was about to ask and the prosecutor responded: "[t]he question . . . was . . . Would his opinion be the same had he heard that seven years ago David Whitfield committed a sexual assault on his then five-year-old cousin Earl Jones." The prosecutor went on to say, "That is a proper question. Rule 608B." The judge then asked the prosecutor to read MRE 608, and the prosecutor did so with the following interjections. "Specific instances . . . may . . . in the discretion of the Court, if probative of truthfulness, . . . be inquired into on cross-examination of the witness, character of truthfulness or untruthfulness of another witness *as to this character*—and that is Mr. Whitfield. He testified as to the character of Mr. Whitfield. I can ask him about specific instances of conduct on the part of Mr. Whitfield." The record thus shows that MRE 608 was the basis of the prosecutor's cross-examination regarding the alleged instance of misconduct, defense counsel's objection, and the judge's ruling.

[3] The record contains a reference to MRE 404; this occurred in a cryptic exchange between the prosecutor and the judge that took place after the jury had reached a verdict, but before it was announced. Defense counsel was not present.

dant and the people understood that defense counsel's questioning was under MRE 608. Although Barnes may have strayed beyond a discussion of the witness' reputation for truthfulness, that did not open the door to rebuttal pursuant to MRE 404(a)(1) and 405, absent a finding by the trial judge that this was by design. Absent such a finding, the proper judicial response when the prosecutor objected was simply to strike the unresponsive statements and caution the jury. Unsolicited testimony touching on general reputation by a defense witness being questioned about reputation for truthfulness under MRE 608 does not automatically open up an unlimited range of cross-examination under Rules 404(a)(1) and 405.

CAVANAGH, J., concurred with LEVIN, J.

ARCHER, J., took no part in the decision of this case.