# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

ABDULAI BANGURAH,

      Defendant-Appellant.

UNPUBLISHED
August 4, 2015

No. 321381
Bay Circuit Court
LC No. 13-010179-FC

Before: FORT HOOD, P.J., and SAAD and RIORDAN, JJ.

PER CURIAM.

Defendant appeals his jury trial convictions for first-degree criminal sexual conduct and first-degree home invasion. For the reasons stated below, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

Defendant apparently met the victim at a party on the evening of March 12, 2013. At some point during the night, the victim, who hosted the gathering at her apartment, asked her guests to leave because she had had too much to drink. The party-goers left to carry on in another apartment in the victim's building. Defendant, however, returned to the victim's apartment thereafter. He broke in, found the victim asleep, and got into bed with her. As defendant began to touch the victim, she told him to stop, but he did not. Defendant then put his fingers in the victim's vagina, and ultimately penetrated her with his penis. When the victim began to scream, defendant forcibly pushed her shoulders down and continued to rape her. Another resident of the apartment complex, who was returning from work, heard the victim's screams and pleas for "help" and for someone to "stop," and called 911. Defendant continued to sexually assault the victim until an unidentified man came into the apartment and stated that police were searching the building.

The police arrested defendant and the prosecution charged him with: (1) two counts of first-degree criminal sexual conduct, pursuant to MCL 750.520b(1)(f) (use of force or coercion) and MCL 750.520b(1)(c) (penetration during commission of a felony); and (2) first-degree home invasion, pursuant to MCL 750.110a(2). Defendant requested a jury trial, and the Bay Circuit Court empanelled a jury to hear his case. The jury heard testimony from, among others: the victim, the victim's friend and fellow party-attendee, the neighbor who called 911, a police officer who responded to the scene, a nurse at the sexual trauma center visited by the victim, and defendant himself.

-1-

The victim, her friend, and the neighbor testified to the above events, while the nurse and police officer provided testimony that corroborated these events. Specifically, the nurse stated that the victim, who came to the trauma center for an exam, said that she had been sexually assaulted. In her examination of the victim, the nurse found an abrasion on the victim's genital area that indicated violent sexual penetration.[1] Likewise, the police officer testified that he found the victim sitting on a mattress, crying, and repeating "he raped me." The officer also noted that the door frame to the victim's apartment had been broken.

In his testimony, defendant presented a rather different version of events. He claimed that he and the victim talked and flirted at the party in the victim's apartment, and that the victim accompanied the other party-goers when they moved to a neighboring apartment. The victim, according to defendant, returned to her apartment only after the arrival of his girlfriend, which supposedly upset her. Defendant said he followed the victim to apologize for his girlfriend's behavior, and found the door to the victim's apartment open. After defendant called the victim's name, she invited him to come inside and told him that she liked him. Defendant claimed they then had consensual sex, and that the victim changed her demeanor only when an unidentified individual walked into the room.

During defendant's cross-examination, the prosecutor asked defendant if he had called his sister while in jail, to tell her about what had happened the evening of the victim's rape. This query led to the following exchange:

> *Q (Prosecutor).* [Y]ou have a sister . . . , correct?
>
> *A (Defendant).* Yes, sir.
>
> *Q.* You were talking with her on the phone in August?
>
> *A.* Yeah, I talked to my sister, yes.
>
> *Q.* Do you recall telling her that you didn't remember anything about what happened that night?
>
> *A.* Well, 'cause I didn't want to talk about the situation with her.
>
> *Q.* So, you did tell her that you didn't remember anything?
>
> *A.* Yeah, because she wanted to know what happened and stuff like that, and I was around inmates in the—I didn't want to talk about my case.
>
> *Q.* She wanted to know what happened?

---

[1] The nurse also explained that while it was possible for an injury of the type the victim possessed to occur during consensual sex, she had never seen this type of injury in women who had had consensual sex.

*A*. Yeah. But also, [the victim] . . . got friends that's in the jail and they wasn't really nice to me and stuff like that. I'm . . . a polite guy. I'm gentle. You know, I'm a cool guy. I didn't want to start no trouble with anyone talkin' about the case.

*Q*. So, people were mean to you in the jail?

*A*. Yes.

*Q*. And you're a polite guy and you're gentle?

*A*. Yes.

*Q*. So, you never bragged to your sister about fights you got into and about beating people up in the jail?

*A*. That—

At this point, defense counsel objected to the prosecution's questioning as irrelevant. The prosecutor responded that he sought to impeach defendant, because of the fact that defendant claimed he was "polite" and "gentle," yet had assaulted other inmates. Though the court initially permitted the prosecution to continue the line of questioning, it almost immediately told the prosecutor to move on after the prosecutor and defense counsel spoke with one another.

The jury convicted defendant of two counts of first-degree criminal sexual conduct, and first-degree home invasion. On appeal, defendant argues that the trial court abused its discretion when it permitted the prosecutor to question him about assaulting other inmates in the jail. Specifically, defendant says this exchange was: (1) irrelevant under MRE 401 and, even if relevant, unfairly prejudicial under MRE 403; and (2) impermissible character evidence under MRE 404(a)(1). The prosecution argues that the prosecutor's line of questioning was appropriate, relevant, and not unfairly prejudicial, and asks us to uphold the ruling of the trial court.

## II. STANDARD OF REVIEW

"A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). A trial court abuses its discretion when it chooses an outcome outside of the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

"[P]reliminary questions of law, e.g., whether a rule of evidence or statute precludes admissibility of evidence," are reviewed de novo. *People v Lukity*, 460 Mich 484, 487; 596 NW2d 607 (1999). An error in the admission of evidence "does not warrant reversal unless 'after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative.' " *Burns*, 494 Mich at 110, quoting *Lukity*, 460 Mich at 495-496.

## III. ANALYSIS

Under MRE 401, relevant evidence tends to "make a material fact at issue more probable or less probable than it would be without the evidence." *People v Crawford*, 458 Mich 376, 387; 582 NW2d 785 (1998). The possibility that defendant assaulted other prisoners indicates that he is capable of assaulting others, and thus tends to "make a material fact at issue"—whether defendant broke into the victim's home and raped her—"more probable . . . than it would be without the evidence." *Id*. Defendant's arguments to the contrary defy both logic and common sense, and are without merit.

Nor is the evidence inadmissible under MRE 403, which only prohibits the admission of relevant evidence when the evidence's "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. "Unfair prejudice" means "more than simply damage to the [defendant's] cause. . . . What is meant [by MRE 403] is an undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one. *People v Vasher*, 449 Mich 494, 501; 537 NW2d 168 (1995). When a court assesses whether the probative value of the evidence is substantially outweighed by unfair prejudice, it performs a balancing task that looks to several factors, including:

> . . . the time required to present the evidence and the possibility of delay, whether the evidence is needlessly cumulative, how directly the evidence tends to prove the fact for which it is offered, how essential the fact sought to be proved is to the case, the potential for confusing or misleading the jury, and whether the fact can be proved in another manner without as many harmful collateral effects. [*People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).]

Here, there is nothing unfairly prejudicial about the prosecution's questioning of defendant about altercations he allegedly had with other inmates. The time required to question defendant on this topic was minimal, there was no delay to the trial, the questioning was not cumulative, the events described by the questioning tended to suggest defendant was capable of violence, and there was very little potential for the questioning to confuse the jury. *Id*.

Equally unavailing is defendant's argument that the prosecution's questions about his fights with other inmates at the jail constituted impermissible character evidence under MRE 404(a)(1). That rule states:

> (a) Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

> (1) *Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same*; of if evidence of a trait of character of the alleged victim of the crime is offered by the accused and admitted under subdivision (a)(2), evidence of a trait of character for aggression of the accused offered by the prosecution . . . . [MRE 404(a) (emphasis added).]

-4-

"In general, where a defendant 'takes the stand and testifies in his own defense, his credibility may be impeached and his testimony assailed like that of any other witness . . . .' " *People v Fields*, 450 Mich 94, 110; 538 NW2d 356 (1995). Put simply, if a defendant testifies to his own good character, the prosecution can introduce evidence that defendant actually is of bad character. *People v Whitfield*, 425 Mich 116, 130; 388 NW2d 206 (1986). It is possible that a witness "may well slip into a general discourse on the defendant's character . . . thus opening up the range of rebuttal allowed to the prosecution . . ." *Id.* at 131. When this happens, "the defense may thus unwittingly furnish the foundation for the prosecutor to acquaint the jury with matters which otherwise could not be admitted into evidence." *Id.*

In this case, defendant put his character at issue by offering unsolicited information about his supposedly "polite" and "gentle" nature, when the prosecutor merely asked him whether he told his sister about the events that took place on the night of the victim's rape. The prosecution had every right to rebut defendant's assertions about his character with evidence that defendant engaged in violent behavior with other inmates. MRE 404(1)(a); *Fields*, 450 Mich at 110. Defendant's assertions that this somehow violated MRE 404(1)(a) are simply wrong and a misinterpretation of the plain language of that rule and Michigan law.

In any event, were we nonetheless to find that the trial court improperly admitted this exchange between the prosecutor and defendant, defendant has failed to show that this brief line of questioning prejudiced his case. *Burns*, 494 Mich at 110. The jury heard testimony from the victim, her friend, her neighbor, a police officer, and a nurse, that contradicted defendant's version of events and suggested his guilt—all of which had nothing to do with this single exchange between defendant and the prosecutor. In sum, it is very likely defendant would have been convicted absent the line of questioning of which he complains. See *Lukity*, 460 Mich at 495-496.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Henry William Saad
/s/ Michael J. Riordan