# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RAYMOND KEITH DISHNO,

Defendant-Appellant.

UNPUBLISHED
October 16, 2018

No. 339216
Delta Circuit Court
LC No. 16-009380-FH

Before: BECKERING, P.J., and RIORDAN and CAMERON, JJ.

PER CURIAM.

Defendant was convicted of one count of possession with intent to deliver less than 50 grams of cocaine, MCL 333.7401(2)(a)(*iv*), and was sentenced as a fourth-offense habitual offender, MCL 769.12, to serve 32 months to 20 years in prison.[1] On appeal, he argues (1) the prosecution's expert on drug slang was not properly qualified, and (2) the trial court should have provided an adverse-inference instruction to the jury because the police interrogation video was unavailable. We affirm.

## I. BACKGROUND

During the summer of 2016, Escanaba Public Safety ("EPS") officers received information from Nathan Gartland, a former friend of defendant, that defendant was selling cocaine. Gartland provided the information while enrolled in a local police-sanctioned substance abuse assistance program. Gartland informed police that defendant drove a "blue Chevy pickup with a ladder rack, [with] loud exhaust[,] . . . containing a large amount of cash and drugs," and that defendant stored the cocaine in a green "safety kit box."

On August 13, 2016, Gartland went to defendant's house and purchased a half gram of cocaine from defendant and apparently used all of the cocaine while at defendant's house. Later that evening, Gartland and defendant drove to a grocery store in defendant's vehicle. While the men were driving, EPS Officer Kyle Piatt was conducting traffic patrol and had received

---

[1] Defendant was also convicted of maintaining a drug vehicle, MCL 333.7405(1)(d), and was sentenced to time served. Defendant does not appeal this conviction.

-1-

information regarding Gartland's tip. Piatt observed the distinctive features of defendant's vehicle, pulled behind it to check its plates, and stopped the vehicle after learning that it belonged to defendant. Piatt called for backup, and a canine sniff was conducted around defendant's truck. The dog alerted officers to the presence of narcotics in the vehicle.

The officers searched defendant's truck and discovered, among other things, a metal tobacco can underneath the driver's side seat. The can contained six individual packages of suspected cocaine. The officers also seized from the inside of defendant's wallet a small "drug ledger" with small amounts, names, and times written on it, plus a large quantity of three-inch by three-inch plastic bags, and about $2,310 in cash. Laboratory results confirmed that the substance was cocaine and weighed approximately four grams. The officers also seized defendant's cell phone for forensic analysis.

After defendant was in custody, he was taken to an interview room at the EPS department. The interview room was equipped with an audio and video recording device. The officers read defendant his *Miranda*[2] warnings, to which defendant responded that he wanted a lawyer and that he did not want to speak to the officers. The police stopped the interview; however, defendant made several unsolicited statements. The officers testified that defendant stated "something to the effect of, 'I only buy the cocaine. I buy it as it was as you found it. I'm a recreational user, and I only sell a little.' " The statements reportedly made by defendant were automatically erased because the police did not preserve the recording within 14 days of the interview.

At trial, Detective/Sergeant Anthony LaPlant was qualified as an expert witness in the field of cell phone forensics and "in the field of drug profiling related to communications associated therewith." He testified that his forensic examination of defendant's cell phone revealed "[t]ransactional sounding text messages," which meant "that they're talking in drug slang." According to LaPlant, it is uncommon for people to communicate using the names of the drugs that they were using or selling; rather, they used slang words. He testified about several text messages found on defendant's phone, received and sent during the summer of 2016, which used coded terminology to refer to several controlled substances, including marijuana, cocaine, and various pills. For instance, defendant used terms like "full T" to reference methamphetamine, "orange" to reference Suboxone, and "go-go" to reference cocaine.

At the conclusion of the prosecution's case-in-chief, defendant called several witnesses who suggested defendant regularly kept large amounts of cash on him because he performed home repair work and often received payments in cash. Additionally, the mother of defendant's children testified that when she saw defendant in his truck on August 13, 2016, she did not see any drugs or paraphernalia and that, although she knew defendant had occasionally used cocaine, she never saw defendant sell cocaine.

When defendant testified, he denied ever selling cocaine and denied ownership and knowledge of the cocaine found under his car seat. Defendant theorized that the cocaine could

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

have belonged to or been planted by Gartland. Moreover, according to defendant, the ledger in his wallet was something he used to note personal loans and some marijuana sales, and the coded text messages that LaPlant had testified about were all references to marijuana, not cocaine. Additionally, defendant denied telling the officers that he used cocaine or sold cocaine, and testified that he told them he sold only "a little bit of marijuana."

## II. ANALYSIS

### A. MRE 702

Defendant claims that the trial court erroneously qualified LaPlant as an expert witness in "drug slang," allowing LaPlant to interpret defendant's coded text messages. We disagree.

This Court reviews a trial court's "determination regarding the qualification of an expert and the admissibility of expert testimony" for an abuse of discretion. *People v Murray*, 234 Mich App 46, 52; 593 NW2d 690 (1999). "At its core, an abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome." *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). "When the trial court selects one of these principled outcomes, the trial court has not abused its discretion . . . . An abuse of discretion occurs, however, when the trial court chooses an outcome falling outside this principled range of outcomes." *Id*.

Defendant does not challenge the interpretation of drug slang as a recognized discipline; rather, defendant asserts that LaPlant was not qualified to interpret the drug slang used in the text messages because his experience in this area was too stale. Testimony from an expert witness is governed by MRE 702, which provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"An expert witness may offer an opinion only if he or she has specialized knowledge that will assist the trier of fact to understand the evidence." *People v Carll*, 322 Mich App 690, 699; 915 NW2d 387 (2018). "[A] proposed expert should not be scrutinized by an overly narrow test of qualifications." *People v Whitfield*, 425 Mich 116, 123; 388 NW2d 206 (1986) (quotation marks and citation omitted). "The determinative inquiry in qualifying an expert is the nature and extent of knowledge and actual experience[.]" *Carll*, 322 Mich App at 699 (quotation marks and citation omitted). Michigan courts have generally accepted that drug-related law enforcement officers possess specialized knowledge from their training and experience that can assist a lay jury's understanding of evidence in a controlled substance case. See, e.g., *People v Williams (After Remand)*, 198 Mich App 537, 542; 499 NW2d 404 (1993) (finding no error where police

officer was qualified as an expert witness and explained how innocuous household items can have an alternative use in illicit drug trade).

In this case, LaPlant's knowledge, experience, and training in narcotics linguistics were properly established. Specifically, from 2005 to 2008, LaPlant served in a specialized drug enforcement unit where he gained experience managing informants and investigating drug crimes. While working with this unit, LaPlant was personally in charge of more than 200 narcotic investigations, "dealt with people all the time that have talked this way," received specialized controlled substance training, and participated in about 12 undercover controlled drug buys. Additionally, LaPlant testified that during his years with the unit, he purchased narcotics directly from dealers and through informants, using email, text messaging, and face-to-face contact with suspects. LaPlant characterized the linguistics he observed in his experience as "typical street talk." Notably, LaPlant's familiarity and expertise with narcotics linguistics is supported in his statement that "you have to sell that you're involved in this stuff, so you have to look and sound like they do," because suspected drug dealers typically will not sell narcotics to others who do not "refer to it how they refer to it."

Prior to his three years with the specialized drug unit, LaPlant served five years working on road patrol from 2000 to 2005 investigating close to 100 cases involving controlled substances, and he attended drug interdiction and awareness training as recently as the year 2012. LaPlant testified that he routinely attended annual legal updates regarding narcotic trafficking. Moreover, LaPlant affirmed that as a detective, he continued to assist other officers with investigating narcotics cases using mobile forensics and surveillance, and that he routinely reviewed cellular phone records relating to controlled substances. Defendant's contention that LaPlant's experience with language used in drug transactions was outdated is not supported by the record, which indicates that LaPlant was continuously involved in narcotics cases to some extent, and he was fluent in the language used in drug transactions. Therefore, LaPlant's experience in dealing with narcotics linguistics was both extensive and current.

Considering LaPlant's testimony regarding his 17-year career in law enforcement and the years he spent working with and learning the linguistics associated with narcotics sales, he was properly qualified as an expert, *Murray*, 234 Mich App at 53, because his knowledge, experience, and training established that his testimony was "based on sufficient facts" and was the product of reliable principles and methods that were reliably applied to the facts of the case as required under MRE 702.

Defendant claims that LaPlant's testimony was inadmissible because he was addressing communications that were "within common knowledge," and the jury was just as capable of considering the evidence and arriving at its own conclusion. Defendant's argument is without merit because LaPlant's testimony was highly relevant to the case. LaPlant's specialized knowledge assisted the jury in understanding defendant's coded text messages, i.e., it "serve[d] to give the trier of fact a better understanding of the evidence or assist in determining a fact in issue." *Murray*, 234 Mich App at 53 (quotation marks and citation omitted); see also MRE 702. Without LaPlant's testimony, the jury would have been left to interpret terms like "full T" and "orange" without any guidance. Moreover, the testimony established "that defendant intended to sell the drugs and not simply use [them] for personal consumption." *People v Ray*, 191 Mich App 706, 708; 479 NW2d 1 (1991).

Finally, contrary to defendant's claim, MRE 403 would not exclude the admission of LaPlant's testimony. MRE 403 provides that a trial court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." LaPlant's testimony was highly probative of defendant's intent to deliver cocaine because the testimony identified and explained a series of "[t]ransactional sounding text messages," which helped prove defendant knowingly possessed, and intended to deliver, the cocaine. Moreover, the trial court instructed the jury that LaPlant's testimony could not "be used to determine whether the defendant committed the crimes charged," and that it could consider the testimony "only as an aid with respect to the text messages." The jury presumably followed the court's instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).

In sum, the trial court's determination that LaPlant was qualified to testify as an expert in narcotics linguistics was within the range of reasonable and principled outcomes, *Babcock*, 469 Mich at 269, because his testimony was based on sufficient facts and was the product of reliable principles that, under MRE 702, were applied reliably to the facts of the case. Therefore, the trial court did not abuse its discretion in permitting LaPlant to testify as an expert witness and decode defendant's text messages.

## B. MCL 763.9

Next, defendant claims that he was entitled to an adverse-inference instruction under MCL 763.9 and that he received ineffective assistance of counsel by his trial attorney's failure to request such an instruction. We disagree.

Defendant failed to preserve this issue because it was not raised in the trial court. See *People v Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994). Therefore, this Court's review is for plain error affecting defendant's substantial rights. *People v Aldrich*, 246 Mich App 101, 124-125; 631 NW2d 67 (2001). Further, because he failed to raise it in either a timely filed motion for a new trial, *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000), or a motion for a *Ginther*[3] hearing, *People v Hurst*, 205 Mich App 634, 641; 517 NW2d 858 (1994), our review of defendant's claim of ineffective assistance of counsel "is limited to errors apparent on the record." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

MCL 763.9 provides:

Any failure to record a statement as required under [MCL 763.8[4]] or to preserve a recorded statement does not prevent any law enforcement official

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[4] MCL 763.8(2) provides in part that "[a] law enforcement official interrogating an individual in custodial detention regarding the individual's involvement in the commission of a major felony shall make a time-stamped, audiovisual recording of the entire interrogation."

present during the taking of the statement from testifying in court as to the circumstances and content of the individual's statement if the court determines that the statement is otherwise admissible. However, unless the individual objected to having the interrogation recorded and that objection was properly documented under [MCL 763.8(3)[5]], the jury shall be instructed that it is the law of this state to record statements of *an individual in custodial detention who is under interrogation* for a major felony and that the jury may consider the absence of a recording in evaluating the evidence relating to the individual's statement. [Emphasis added.]

MCL 763.7 gives the following relevant definitions:

(a) "Custodial detention" means an individual's being in a place of detention because a law enforcement official has told the individual that he or she is under arrest or because the individual, under the totality of the circumstances, reasonably could believe that he or she is under a law enforcement official's control and is not free to leave.

(b) "Interrogation" means questioning in a criminal investigation that may elicit a self-incriminating response from an individual and includes a law enforcement official's words or actions that the law enforcement official should know are reasonably likely to elicit a self-incriminating response from the individual. [MCL 763.7(a), (b).]

Defendant was not "under interrogation" within the meaning of MCL 763.9 when he uttered incriminating statements that were subsequently and inadvertently purged. The undisputed testimony of the EPS officers who interviewed defendant indicates that after defendant requested an attorney, questioning ceased, and the incriminating statements that followed were unsolicited. In short, there is no indication in the record that defendant made the incriminating statements during "questioning in a criminal investigation that [might have] elicit[ed] a self-incriminating response" or that they were given in response to "words or actions that the law enforcement official should [have known were] reasonably likely to elicit a self-incriminating response from the individual." MCL 763.7(b). Consequently, defendant was not entitled to an adverse-inference instruction under MCL 763.9. Further, defense counsel's failure

---

[5] MCL 763.8(3) provides:

An individual who believes the individual's interrogation is being recorded may object to having the interrogation recorded. The individual's objection shall be documented either by the individual's objection stated on the recording or the individual's signature on a document stating the objection. If the individual refuses to document the objection either by recording or signature, a law enforcement official shall document the objection by a recording or signed document. A major felony recording may be made without the consent or knowledge of, or despite the objection of, the individual being interrogated.

to request such an instruction did not render her performance ineffective. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

Affirmed.

/s/ Jane M. Beckering
/s/ Michael J. Riordan
/s/ Thomas C. Cameron