*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHRISTOPHER ALLEN KINGSLAND,

        Defendant-Appellant.

UNPUBLISHED
January 22, 2019

Nos. 339064; 340176
Grand Traverse Circuit Court
LC No. 16-012501-FC

Before: BOONSTRA, P.J., and SAWYER and TUKEL, JJ.

PER CURIAM.

In these consolidated cases, defendant appeals by right his conviction for first-degree criminal sexual conduct, MCL 750.520b. The trial court sentenced defendant as a fourth offense habitual offender, MCL 769.12(1)(a), to serve 30 to 40 years in prison. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises out a January 17, 2016 incident involving defendant, the manager of Fantasy's (a strip club), and an exotic dancer at the club. Defendant, who directly supervised the victim, raped her that evening. The victim testified that while she was preparing to leave for the night, she observed an argument between defendant and another dancer. Defendant had been drinking. At one point, defendant threatened the dancer, and the victim intervened in an attempt to break up the altercation. The victim and defendant struggled, but the two eventually laughed off the encounter. Defendant offered to smoke with the victim and to sort out the situation. The two went into the men's bathroom. The victim claimed that at that point defendant pulled out his penis and a struggle ensued as defendant attempted to remove the victim's sweatpants. The victim ended up face-first on her stomach on the bathroom floor. Defendant, over her physical and verbal protests, then engaged in sexual intercourse with her. The victim was eventually able to break contact with defendant, and defendant allowed her to leave.

At a pretrial hearing, the prosecution sought to admit other-acts testimony under MRE 404(b)(1). The prosecution sought to call another dancer from Fantasy's to testify regarding a similar sexual encounter with defendant. The prosecution argued that this testimony was admissible as proof of a common scheme, plan, or system; intent, and absence of mistake.

Defendant's trial counsel opposed this testimony as a veiled attempt to make a prohibited propensity argument. The trial court permitted the testimony.

At trial, defendant called several witnesses in his defense, including two dancers at Fantasy's and the current assistant manager. These witnesses testified, in part, that they did not observe defendant engage in any violent or inappropriate sexual conduct towards themselves or the other dancers. On cross-examination, the prosecution asked each of these witnesses whether they were aware of various allegations against defendant by other dancers and employees at Fantasy's. These allegations included allegations of violence and sexual conduct toward the dancers.

The jury found defendant guilty of first-degree criminal sexual conduct, and this appeal followed.

## II. ANALYSIS

Defendant raises numerous issues on appeal. He argues that the other-acts testimony was improperly admitted; that the prosecution improperly offered character evidence through its cross-examination; and that his trial counsel was ineffective. For the reasons provided below, we disagree.

## A. OTHER-ACTS EVIDENCE

Defendant first argues that the trial court erroneously admitted other-acts evidence. We review a trial court's decision to admit evidence for an abuse of discretion. *People v Musser*, 494 Mich 337, 348; 835 NW2d 319 (2013). A court abuses its discretion when its decision is "outside the range of principled outcomes." *Id*. However, a nonconstitutional, preserved error is "presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative." *Id*. (quotation marks and citation omitted).

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." MRE 404(b)(1). However, such evidence may

> be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case. [MRE 404(b)(1).]

Our Supreme Court explained the four-prong standard for determining the admission of other-acts evidence:

> "First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting

instruction to the jury." [*People v Denson*, 500 Mich 385, 398; 902 NW2d 306 (2017), quoting *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993).]

The first prong requires the prosecution to articulate a "proper noncharacter purpose for admission of the other-acts evidence." *Denson*, 500 Mich at 398. When the prosecution's "only theory of relevance is that the other act demonstrates the defendant's inclination for wrongdoing in general and thus indicates that the defendant committed the conduct in question," the evidence fails prong one. *Id*. "[I]n order to determine whether an articulated purpose is, in fact, merely a front for the improper admission of other-acts evidence, the trial court must closely scrutinize the logical relevance of the evidence under the second prong of the *VanderVliet* test." *Id*. at 400.

Other-acts evidence may be admitted to show a common scheme, plan, or system when "the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *People v Knox*, 469 Mich 502, 510; 674 NW2d 366 (2004) (quotation marks and citation omitted). This "is not limited to circumstances in which the charged and uncharged acts are part of a single continuing conception of plot . . . ." *Id*. (quotation marks and citation omitted). Further, "a high degree of similarity is not required, nor are distinctive or unusual features required to be present in both the charged and the uncharged acts." *People v Steele*, 283 Mich App 472, 480; 769 NW2d 256 (2009). But a common "similarity between the charged and uncharged acts does not . . . by itself, establish a plan, scheme, or system used to commit the acts." *Knox*, 469 Mich at 510 (quotation marks and citation omitted).

In this case, the similarities and commonalities between the accounts of the other-acts witness and the victim showcased this scheme, plan, or system of defendant utilizing his authority as a manager to coerce, threaten, or intimidate his subordinate dancers into engaging in sexual activity with him. Both instances involved alleged unconsented sex with defendant. In both cases, the club was either closed or it was near closing time, and the alleged assaults occurred in private areas of the club with few witnesses. Both instances involved a dancer over whom defendant had direct supervision. Additionally, in both cases, the dancers were afraid of losing their jobs if they reported or refused the conduct. Therefore, these two instances were "sufficiently similar to support an inference that they [were] manifestations of a common plan, scheme, or system," *Knox*, 469 Mich at 510, where the common plan, scheme, or system was for defendant to coerce his employee dancers into having sex with him.

The second prong addresses "logical relevance," and other-acts evidence is logically relevant if it is both material and probative. *Denson*, 500 Mich at 401. To be material, evidence must be related to "any fact that is of consequence to the determination of the action." MRE 401; see also *Denson*, 500 Mich at 401. To be probative, it must tend "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401; *Denson*, 500 Mich at 401-402. In this case, defendant does not address or dispute that the other-acts testimony was both material to and probative of defendant's criminal sexual conduct toward the victim.

The third prong requires "that the probative value of the evidence is not substantially outweighed by unfair prejudice." *Denson*, 500 Mich at 398 (quotation marks and citation omitted). Evidence is unfairly prejudicial when there is a danger that the jury will give

marginally probative evidence undue weight. *People v Ortiz*, 249 Mich App 297, 306; 642 NW2d 417 (2002). However, a limiting instruction (the fourth prong) is sufficient to "counterbalance any potential for prejudice spawned by the other acts evidence." *People v Martzke*, 251 Mich App 282, 295; 651 NW2d 490 (2002). In this case, the trial court gave a limiting instruction after the other-acts witness testified and in the final jury instructions, and "[j]urors are presumed to follow their instructions." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011).

Accordingly, all four prongs were met, and the trial court did not err in admitting the other-acts testimony over defendant's objections.

### B. CHARACTER EVIDENCE THROUGH CROSS-EXAMINATION

Defendant next argues that the prosecution improperly offered character evidence through its cross-examination. Trial counsel failed to object to the prosecution's cross-examination. Therefore, the issue is unpreserved, and our review is for plain error affecting defendant's substantial rights. *People v Knapp*, 244 Mich App 361, 375; 624 NW2d 227 (2001).

Generally, evidence of a person's character or character trait is inadmissible to show that they acted "in conformity therewith on a particular occasion." MRE 404(a). However, "[u]nder MRE 404(a)(1) a defendant may offer evidence that he or she has a character trait that makes it less likely that he or she committed the charged offense." *People v Roper*, 286 Mich App 77, 93; 777 NW2d 483 (2009). "But once a defendant chooses to present evidence of his or her character, the prosecutor may also present evidence concerning that same character trait to rebut the defendant's evidence." *Id.*

However, even if admissible, there are restrictions on how both a defendant and the prosecution may offer this type of evidence. MRE 405(a) states:

> In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into reports of relevant specific instances of conduct.

Consequently, a "party may only call witnesses to offer testimony concerning their personal opinion of that person's character or to testify about that person's reputation." *Roper*, 286 Mich App at 97. "Moreover, although MRE 405(a) permits 'inquiry' into *specific instances of conduct*, it limits such inquiries to *cross-examination*." *Id*. (emphasis added). "A witness questioned concerning the defendant's character for [a particular aspect] may well slip into a general discourse on the defendant's character . . . thus opening up the range of rebuttal allowed to the prosecution under MRE 404(a)(1)." *People v Whitfield*, 425 Mich 116, 131; 388 NW2d 206 (1986). Consequently, "[a] character witness for the defense may . . . unwittingly furnish the foundation for the prosecutor to acquaint the jury with matters which otherwise could not be admitted into evidence." *Id*.

In this case, the prosecutor cross-examined three witnesses about allegations that other dancers and employees of Fantasy's had made about defendant. These allegations involved specific instances of conduct regarding defendant's character and character traits. This type of

-4-

questioning was proper under MRE 404(a)(1) because these witnesses first offered testimony regarding defendant's character—namely that he was a nonviolent and appropriate person who did not touch the dancers sexually or inappropriately.

On direct examination, two dancers both testified that they had not seen defendant be violent, either with them or with other dancers. One specifically testified that she did not feel threatened by defendant. They also testified that while defendant may have playfully touched the dancers, it was never in an inappropriate or sexual way. This testimony was character evidence of defendant's pertinent traits. When these two dancers testified as to whether they ever saw defendant be violent or act inappropriately towards the other dancers, this was meant to show the jury that defendant was not a violent or inappropriate person in his interactions with the dancers. It was meant to show that because defendant had not engaged in such conduct in the past, he was less likely to have engaged in the charged offense. Other than to "boost" his own character, defendant's actions toward other dancers had no bearing on whether he sexually assaulted the victim.

This case is similar to that of *People v Lukity*, 460 Mich 484; 596 NW2d 607 (1999), where our Supreme Court held that the defendant's testimony about his "role as a father and provider" and the "examples of the types of activities he engaged in with his children" was proffered character evidence. *Id*. at 498. The Court held that the defendant "essentially claimed that he only engaged in appropriate activities with his children" and that such evidence was "clearly 'evidence of a pertinent trait of character' in the context of a trial on charges that defendant raped his daughter." *Id*. In a similar way, the witnesses in this case gave examples of defendant's interactions in his role as a manager, and they claimed that defendant was only engaged in appropriate activities with the dancers. While perhaps not his intent, defendant "unwittingly furnish[ed] the foundation for the prosecutor to acquaint the jury with matters which otherwise could not be admitted into evidence." See *Whitfield*, 425 Mich at 131.

In sum, the prosecution's cross-examination questions were intended to rebut defendant's presentation of character evidence under MRE 404(a)(1). The prosecution used specific instances of conduct to do so, and this was permitted under MRE 405(a).[1]

---

[1] We note that there were a few of the prosecutor's questions that arguably pertained to conduct that fell outside the scope of MRE 405(a), i.e. the prosecutor asked about specific instances of conduct that did not necessarily pertain to the character trait the witness initially testified to. However, defendant has failed to show how any error affected the outcome of the trial. First, the prosecutor's questions were not evidence, and the jury was specifically instructed to only consider the evidence presented and that "[t]he lawyer's questions to the witnesses . . . are not evidence." See *Mahone*, 294 Mich App at 212 ("Jurors are presumed to follow their instructions . . . ."). Second, the answers to these potentially impermissible questions were all in the negative. In other words, when these witnesses were asked about specific instances of misconduct on defendant's part, they all were unaware of the allegations. Therefore, these witnesses did not provide any evidence of these other instances of misconduct, and defendant cannot show how this questioning affected defendant's substantial rights.

## C. MRE 403

Defendant also takes issue with certain testimony brought out by the prosecutor's cross-examination, but he did not object at the time. Therefore, we review these unpreserved issues for plain error affecting defendant's substantial rights. *Knapp*, 244 Mich App at 375.

Relevant evidence is generally admissible. MRE 402. However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." MRE 403. "In this context, prejudice means more than simply damage to the opponent's cause. A party's case is always damaged by evidence that the facts are contrary to his contentions, but that cannot be grounds for exclusion." *People v Vasher*, 449 Mich 494, 501; 537 NW2d 168 (1995). Rather, "[u]nfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).

Our Supreme Court recently stated:

> The weighing of evidence's probative value against its prejudicial effect requires a balancing of several factors, including the necessary time to present the evidence, whether the evidence is needlessly cumulative, how directly probative the evidence is, how necessary the fact to be proven by the evidence is, whether the evidence would mislead the jury, and whether there is an alternative and less potentially harmful way to prove the fact. [*People v Sharpe*, ___ Mich ___, ___; ___ NW2d ___ (2018) (Docket No. 155748); slip op at 14.]

In this case, the character evidence was highly relevant. Defendant's actions and character as a manager at Fantasy's were crucial to the prosecution's case. The prosecution attempted to demonstrate that defendant used his managerial position and power to physically force the victim to engage in sexual activity with him. Through its other-acts evidence, the prosecution also attempted to show that defendant had a common scheme, plan, or system by which he used his authority to coerce, intimidate, and even physically force other dancers to engage in sexual activity with him. The prosecution argued that this same scheme was then used on the victim. To counter this, defendant called several witnesses to testify to his appropriate character and nonviolent nature. The prosecutor's questions were aimed at directly rebutting this testimony. None of the allegations mentioned by the prosecutor were so inflammatory or outrageous as to unfairly prejudice the jury against defendant. These did not relay unrelated and outlandish allegations from individuals entirely disconnected with the case. Each allegation came from either a dancer or an employee of Fantasy's. These allegations came from individuals in the same working environment as the victim. In fact, the majority of the allegations came from other dancers. Accordingly, they were not of marginal probative value.[2]

---

[2] Indeed, the trial court took steps, outside the presence of the jury, to ensure that no unfair prejudice was injected into the trial by prohibiting questions related to defendant's prior bank robbery and kidnapping convictions. While the convictions arguably spoke to defendant's

Furthermore, the trial court instructed the jury on how to properly consider the evidence of defendant's improper acts. It explicitly instructed the jury not to use such evidence to support a propensity argument, and "[j]urors are presumed to follow their instructions." *Mahone*, 294 Mich App at 212.

### D. INEFFECTIVE ASSISTANCE OF COUNSEL

The ultimate determination of whether a defendant has been deprived of the effective assistance of counsel is a question of constitutional law reviewed de novo. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012).

There is a strong presumption that trial counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012), and a defendant has a "heavy burden" to show otherwise, *Seals*, 285 Mich App at 17. For an ineffective assistance of counsel claim to be successful, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness under professional norms and (2) there is a reasonable probability that, but for counsel's errors, the result would have been different and the result that did occur was fundamentally unfair or unreliable." *Id*.

Importantly, a defendant's inability to succeed on a plain error claim does not automatically preclude him from succeeding on an ineffective assistance claim that relates to the same error. *People v Randolph*, 502 Mich 1, 5; 917 NW2d 249 (2018). This Court "must independently analyze each claim, even if" a defendant's ineffective assistance claim "relates to the same error" as the plain error claim. *Id*.

In this case, as previously discussed, the prosecutor did not erroneously venture into rebuttal character evidence in its cross-examinations. His questions were permissible under MRE 404(a)(1) because defendant "opened the door" by offering evidence of his own pertinent character traits. As already discussed, there was also no MRE 403 violation. Thus, for the vast majority of the prosecutor's questions, defendant's trial counsel had no obligation to object, and failing to do so did not fall below an objective standard of reasonableness. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

However, there were a few questions that arguably were improper, or more precisely would have solicited improper evidence, under MRE 404(a)(1). Yet, even assuming that trial counsel's actions fell below an objective standard of reasonableness for failing to object to these questions, defendant has failed his "heavy burden" because he has not offered a substantive

---

violent character, they were dissimilar to the charged offense and specifically dissimilar to how defendant exercised his authority as manager over the dancers at Fantasy's. For the jury to find out that defendant had prior kidnapping and bank robbery convictions could very well have prejudiced defendant by allowing the jury to give undue weight to these wholly unrelated events. The same cannot be said of the prosecutor's other questions.

analysis showing that these few questions deprived him of a fair trial or that there was a reasonable probability that but for these questions the outcome of the trial would have been different. As already noted, no damaging evidence was admitted as a result of these questions—the witnesses did not have any knowledge of these other specific incidents the prosecutor had inquired about. As a result, the inclusion of these few questions, with no supporting answers, can hardly be said to have prejudiced defendant on these topics. In other words, the outcome of the trial would have been no different had the questions not been asked. Therefore, defendant cannot prevail on his claim of ineffective assistance of counsel.

Affirmed.

/s/ Mark T. Boonstra
/s/ David H. Sawyer
/s/ Jonathan Tukel