*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

V

ROBERT JERRY VANSICKLE,

        Defendant-Appellant.

UNPUBLISHED
November 26, 2019

No. 344065
Lenawee Circuit Court
LC No. 17-018546-FH

Before: JANSEN, P.J., and BOONSTRA and LETICA, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of two counts of felonious assault, MCL 750.82, one count of going armed with a dangerous weapon with unlawful intent,[1] MCL 750.226, and three counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a second habitual offender, MCL 769.10, to concurrent prison terms of two to six years for each felonious assault conviction and 2 to 7½ years for the going armed with a dangerous weapon with unlawful intent conviction, all to be served consecutively to three concurrent 2-year sentences for the felony-firearm convictions. We vacate defendant's convictions and sentences for going armed with a dangerous weapon with unlawful intent and one count of felony-firearm, and affirm defendant's remaining convictions. We remand for entry of a verdict of acquittal on the going armed with a dangerous weapon with unlawful intent charge and the attendant felony-firearm charge, and for resentencing.

---

[1] As discussed later in this opinion, this offense has generally been referred to as "carrying a weapon with unlawful intent," despite the word "carrying" not appearing in the relevant statute. See, e.g., *People v Parker*, 288 Mich App 500, 505; 795 NW2d 596 (2010) (referring to MCL 750.226 as "the statute prohibiting carrying a dangerous weapon with unlawful intent). Notwithstanding our prior caselaw, we will refer to the offense as "going armed with a dangerous weapon with unlawful intent."

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises from a road-rage incident between defendant and the victims, Jeanette Blumenauer and Tristin Sedler. At around 5:00 p.m. on March 8, 2017, Sedler drove Blumenauer's car north on Wilmoth Highway toward their home in Tecumseh, Michigan. Sedler slowed the car down as he approached Academy Road because there were several potholes in the road. As Sedler slowed down, defendant—driving alone in a black Ford Crown Victoria—approached Sedler and Blumenauer from behind, sped up, and passed Sedler and Blumenauer. According to Blumenauer, she saw through the passing car's back window that defendant was waving his middle finger at her and Sedler. No words were exchanged.

Sedler continued to drive behind defendant for some distance. Further down the road, defendant stopped his car sideways on the railroad tracks so that his driver's side was facing Sedler and Blumenauer as their vehicle approached. According to Sedler and Blumenauer, defendant opened his car door, leaned out of the car, and pointed a handgun at them. Defendant did not say anything to Blumenauer or Sedler. At his preliminary examination, Sedler estimated that defendant was approximately 300 yards away at the time he pointed the handgun, but he testified at trial that the distance was closer to 30 to 50 yards. Blumenauer estimated the distance to have been around 10 to 15 yards. Blumenauer used her cellular phone to call the police; meanwhile, defendant shut his car door and drove away. Blumenauer and Sedler told the police of the incident and provided the police with a description of defendant's car and handgun.

Later that day, Raisin Township Police Officer Travis Spicer, Adrian Township Police Officer James Briggs, and Michigan State Police Trooper Michael Persha located defendant and his vehicle at defendant's home. Defendant told Officer Spicer that he owned multiple firearms, possessed a concealed pistol license, and carried a gun with him at all times. Defendant said that he usually carries a firearm in a pocket toward the bottom of the driver's side door and that he was carrying a silver Kimber .45 handgun in his car with him that day. Defendant told officers that a passenger in Blumenauer's car had "flipped him off" after he passed them for driving too slowly.

Before trial, defendant filed a preliminary witness list and preliminary exhibit list. Defendant listed Tony McNeil as an expert witness who would testify about the results of his reconstruction of the incident, and also listed seven character witnesses. Defendant's exhibit list reflected that defendant intended to introduce photographs or videos on which McNeil relied. The prosecution filed a motion in limine to limit the number of character witnesses that defendant could call at trial and to exclude McNeil as an expert witness, and orally moved to exclude any photographs or video relied on by McNeil. The trial court granted the prosecution's motions, holding that defendant could not call any character witnesses at trial unless defendant's character was brought into question. The trial court permitted McNeil to testify regarding "what 900 feet might look like as compared to some other degree of distance, say 45 feet." However, the trial court excluded any video or photographs relied on by McNeil.

It appears from the lower court record that the night before the trial, defendant informed the prosecution that he intended to introduce evidence of an unrelated civil lawsuit between him and Lenawee County to prove that the current charges against him were in retaliation for defendant suing the county. The evidence seemingly concerned body-camera footage from an unnamed police officer who had had a conversation with defendant about the civil lawsuit while

interviewing him concerning the road rage incident.[2]  On the first day of defendant's trial, but before trial began, the prosecution made an oral motion to exclude any reference to the civil lawsuit.  The trial court granted the prosecution's motion and excluded the body-camera footage, holding that it was not relevant or probative of any material issue.

Defendant testified at trial that he stopped his car on the railroad tracks so that he could look at Blumenauer's car, and was "thinking about getting out and confronting" Blumenauer and Sedler; however, he denied pointing a gun at their car.  Defendant was convicted and sentenced as described.

This appeal followed.  After filing his claim of appeal, defendant moved this Court to remand for a *Ginther*[3] hearing on the issue of his trial counsel's effectiveness, which we denied "without prejudice to a case call panel of this Court determining that remand is necessary" on full review.[4]

## II. SUFFICIENCY OF THE EVIDENCE—GOING ARMED WITH A DANGEROUS WEAPON WITH UNLAWFUL INTENT[5]

Defendant argues that the prosecution failed to prove beyond a reasonable doubt that he went armed with a dangerous weapon with unlawful intent.  We agree.

We review de novo a challenge to the sufficiency of the evidence in support of a conviction.  *People v Mayhew*, 236 Mich App 112, 124; 600 NW2d 370 (1999).  This Court must review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt.  *People v Hutner*, 209 Mich App 280, 282; 530 NW2d 174 (1995).  It is the role of the fact-finder, rather than this Court, to determine the weight of the evidence and the credibility of witnesses.  *People v Lee*, 243 Mich App 163, 167; 622 NW2d 71 (2000).  "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime."  *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014).  This Court resolves any evidentiary conflicts in favor of the prosecution.  *Id*.

Defendant was convicted under MCL 750.226, which provides, in relevant part:

---

[2] This footage does not appear in the lower court record and defendant has not provided it to this Court on appeal.

[3] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

[4] See *People v VanSickle*, unpublished order of the Michigan Court of Appeals, issued February 6, 2019 (Docket No. 344065).

[5] As noted, the offense in question is commonly referred to as "carrying a dangerous weapon with unlawful intent."  As we will explain, however, that description does not accurately set forth the essential elements of the offense.  See MCL 750.226.

(1) A person shall not, with intent to use the same unlawfully against the person of another, go armed with a pistol or other firearm, or a pneumatic gun, dagger, dirk, razor, stiletto, or knife having a blade over 3 inches in length, or any other dangerous or deadly weapon or instrument.

A violation of MCL 750.226 is generally referred to as the crime of "carrying a [dangerous] weapon with unlawful intent," despite the fact that the term "carrying" is not part of the statutory text and "does not have any significance in either identifying the elements of the offense or understanding what actions are sufficient to convict under MCL 750.226." *People v Mitchell*, 301 Mich App 282, 292-293; 835 NW2d 615 (2013). As stated in *Mitchell*, "the operative language is 'goes armed.' " *Id*. at 293. An individual "goes armed" within the meaning of MCL 750.226, when the evidence shows "that the accused departed from a location while equipped with a qualifying weapon in his or her possession and, *at the time of departing*, had the intent to use the weapon unlawfully against another person." *Id*. (Emphasis added).

The evidence presented at trial was insufficient to establish that defendant was in a state of "going armed" (with the requisite intent) within the meaning of MCL 750.226. *Mitchell* explicitly distinguished "being armed" from "going armed" by declaring that "being armed" only requires "the existence of the state of having a weapon," whereas an individual "goes armed" when he or she "leave[s] a place or depart[s] with a weapon." *Id*. at 293 n 4. In *People v Ackah-Essien*, 311 Mich App 13, 22; 874 NW2d 172 (2015), this Court further clarified what is necessary to be found guilty under MCL 750.226, stating that the prosecution must prove that "the accused (1) went armed—while possessing a firearm or other dangerous weapon, moved from one location to another location—and (2) *at the time of going armed*, had the intent to use the weapon unlawfully against another person." [Emphasis added.]

Here, the prosecution presented no evidence that defendant intended to use his firearm unlawfully when he departed any place with a weapon; rather, the evidence merely shows that defendant possessed a firearm during the encounter with Sedler and Blumenauer. See *Mitchell*, 301 Mich App at 293 n 4 ("Because the statute clearly prohibits only the conduct of a person who 'goes armed,' use of the phrase 'being armed' impermissibly expands the scope of MCL 750.226.").

In other words, while defendant surely went armed from some location at some point in time before the road rage incident occurred, there is no evidence—nor is there any contention—that he possessed the requisite intent at that time. And even assuming that he possessed the requisite intent at the time of the incident itself, and even though he was armed at that time, he did not at that time "go armed." The statute requires that the state of "going armed" coincide with the requisite intent; that element is lacking here.

Further, even viewing the evidence in the light most favorable to the prosecution, a rational juror could not conclude that defendant "departed" his vehicle while armed, even assuming, without deciding, that a vehicle is a place from which one may depart in order to "go armed" under MCL 750.226. "Go" within the meaning of "go armed," means " 'to leave a place; depart.' " *Id*. at 293, quoting *Random House Webster's College Dictionary* (1992). Sedler testified that defendant "popped the door open and only stuck one foot out of the car, but the rest was inside the car, like the body was in the car, but the foot was out." Blumenauer similarly

-4-

testified that defendant did not "come all the way out [of his car], but he opened his door and leaned his whole upper half out with his arms." MCL 750.226 "requires more than movement within the place where the weapon is initially obtained"; the defendant must actually depart the location with the weapon in hand. *Mitchell*, 301 Mich App at 293. The evidence did not establish that defendant left or departed his vehicle, but merely leaned out of his car. Therefore, defendant did not "go armed" within the meaning of MCL 750.226.

The prosecution presented insufficient evidence to prove defendant guilty of violating MCL 750.226. Accordingly, "[a]cquittal, not retrial, is the proper remedy, as dictated by double jeopardy principles." *People v Parker*, 288 Mich App 500, 509; 795 NW2d 596 (2010). Because defendant's conviction of going armed with a dangerous weapon with unlawful intent must be vacated, defendant's attendant felony-firearm conviction must also be vacated. See *People v Harding*, 443 Mich 693, 716-717; 506 NW2d 482 (1993), abrogated in part by *People v Ream*, 481 Mich 223 (2008) ("If the substantive crime underlying a felony-firearm conviction must be vacated, then that accompanying felony-firearm conviction also must be vacated."). We therefore remand for entry of a verdict of acquittal on the going armed with a dangerous weapon with unlawful intent charge and the attendant felony-firearm charge. Because the going armed with a dangerous weapon with unlawful intent conviction was the sentencing offense used to calculate defendant's recommended minimum sentence range for all convictions, we also remand for resentencing on defendant's remaining offenses. See *People v Jackson*, 487 Mich 783, 792-793; 790 NW2d 340 (2010); *People Francisco*, 474 Mich 82, 91-92; 711 NW2d 44 (2006).

### III. DEFENDANT'S RIGHT TO PRESENT A DEFENSE

Defendant also argues that the trial court denied him his constitutional right to present a defense by (1) excluding McNeil's demonstrative exhibits, (2) excluding a video that references a civil lawsuit between defendant and Lenawee County, (3) removing the jury during Sedler's cross-examination, and (4) failing to give certain jury instructions. To preserve an issue concerning a defendant's constitutional right to present a defense for appellate review, the defendant "must object below and specify the same ground for objection that [he or she] argues on appeal." *People v Bosca*, 310 Mich App 1, 46; 871 NW2d 307 (2015), app for lv to appeal held in abeyance 911 NW2d 465 (Mich, 2018); *People v Unger*, 278 Mich App 210, 246-247; 749 NW2d 272 (2008).

Defendant not only failed to object to the jury instructions or request a particular instruction before jury deliberations, but affirmatively approved the jury instructions as read, thereby waiving his right to challenge any instructional error on appeal. See *People v Carter*, 462 Mich 206, 216; 612 NW2d 144 (2000).

Defendant objected to the trial court's evidentiary rulings, but did not specifically allege a denial of his right to present a defense; therefore, this issue is to that extent unpreserved. Defendant also did not raise below, and therefore failed to preserve, his claim that the trial court's removal of the jury during Sedler's cross-examination denied him his right to present a defense. That assertion of error is also unpreserved. *Bosca*, 310 Mich App at 46; *Unger*, 278 Mich App at 246-247.

This Court reviews unpreserved issues concerning questions of constitutional law for plain error affecting a defendant's substantial rights. *People v Jackson*, 292 Mich App 583, 592; 808

NW2d 541 (2011). To avoid forfeiture under the plain-error standard, the defendant must satisfy three elements: "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

A criminal defendant has a constitutional right to present a defense, but that right "is not unlimited and is subject to reasonable restrictions." *People v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012) (citations omitted). At times, the right to present a defense must give way to "other legitimate interests in the criminal trial process," such as a court "promulgating and implementing its own rules concerning the conduct of trials." *Id*. (citations and quotation marks omitted). The rules of procedure and evidence, which are designed to promote fairness and reliability in the criminal trial process, do not automatically infringe on the right to present a defense. *Id*. at 474. Further, "the right to present a defense 'extends only to relevant and admissible evidence.' " *People v Solloway*, 316 Mich App 174, 198; 891 NW2d 255 (2016), quoting *People v Likine*, 288 Mich App 648, 658; 794 NW2d 85 (2010), rev'd on other grounds 492 Mich 367 (2012).

## A. MCNEIL'S DEMONSTRATIVE EVIDENCE

Defendant contends that the trial court's exclusion of demonstrative evidence to support McNeil's testimony deprived him of the right to present a defense. We agree the trial court erred by denying the admission of the demonstrative evidence, but disagree that defendant was deprived of his right to a defense.

Demonstrative evidence is admissible if it helps the fact-finder reach a conclusion on a matter material to the case. *People v Bulmer*, 256 Mich App 33, 35; 662 NW2d 117 (2003). Demonstrative evidence, as with all evidence, is admissible so long as it meets the "traditional requirements for relevance and probative value in light of policy considerations for advancing the administration of justice." *Unger*, 278 Mich App at 247 (citations and quotation marks omitted). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Even relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

In this case, defendant offered video and photographs as demonstrative evidence to support McNeil's testimony regarding the distance at which a person may be able to discern that someone is holding a handgun. Defendant has not provided this Court with the video he sought to admit, which is required by MRE 7.210(C); we are thus unable to review the probative value of that evidence.[6] With respect to the photographs,[7] defendant's argument is sparse, with little

_____

[6] Defendant states in his brief on appeal that he does not have access to McNeil's video, and offers no argument about it.

explanation as to how or why the photographs would be relevant or probative to any issue in dispute. At trial, defendant focused on Sedler's preliminary-examination testimony that he was approximately 300 yards away from defendant when defendant pointed his handgun at him and Blumenauer.[8] Defendant contested whether Sedler was able to see defendant point a gun at him from so far away, and supported his argument with McNeil's expert testimony. McNeil opined that it would be impossible to tell whether a person that was standing more than 300 yards away was holding a weapon, but that it would be possible to tell if someone was holding a weapon from 50 yards away.

McNeil's photographs were at least minimally relevant and probative in refuting Sedler's claim at the preliminary examination that he saw defendant point a gun at him from 300 yards away even though Sedler testified at trial that defendant was 50 yards away. Moreover, we do not believe that relevance of the photographs was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or considerations of undue delay or waste of time. *Bulmer*, 256 Mich App at 35-36. Accordingly, the trial court erred by excluding the photographs.

Despite the trial court's error, defendant is not entitled to relief because he has not demonstrated that the error affected the outcome of the lower court proceedings. *Carines*, 460 Mich at 763. Through McNeil, defendant was able to present evidence that directly challenged Sedler's and Blumenauer's testimony regarding their ability to see defendant pointing a gun at them. Other than illustrating McNeil's testimony, the photographs would have done little to aid defendant's defense. Accordingly, defendant cannot demonstrate plain error that affected his substantial rights. *Id*.; *Jackson*, 292 Mich App at 592.

## B. REFERENCE TO DEFENDANT'S CIVIL LAWSUIT

Defendant also argues that the trial court denied him the right to present a defense by excluding any reference to a civil lawsuit between him and Lenawee County. We disagree. The disputed evidence concerns an omitted portion of body-camera footage that included references to a civil lawsuit between defendant and Lenawee County. Defendant argues that the evidence was necessary to expose bias on the part of law enforcement officers.

Defendant did not provide this Court with a copy of the excluded evidence, which is required MRE 7.210(C). Nor does he explain how the evidence is relevant or probative of any specific issue in this case. In fact, he offers no information about the civil lawsuit at all. Therefore, defendant has not established that the trial court's decision to exclude any reference to the civil lawsuit hindered his ability to present a defense. Further, defendant's reference to MRE 106 is unpersuasive. MRE 106, commonly known as the "rule of completeness," states:

---

[7] Some of the excluded photographs depict McNeil's reconstruction of certain distances at the scene of the incident, while other photographs were of defendant's gun and a screwdriver.

[8] Defendant also questioned Blumenauer's ability to discern distances and challenged her preliminary-examination testimony that she and Sedler were 10 to 15 yards from defendant when defendant pointed a gun at them.

"When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Defendant does not explain why references to an unrelated lawsuit "ought in fairness to [have been] considered contemporaneously" with the footage that was admitted. Again, evidence must be relevant to be admissible. MRE 402. Accordingly, defendant fails to demonstrate that the trial court erred when it excluded any reference to his civil lawsuit.

## C. SEDLER'S CROSS-EXAMINATION

Defendant further argues that the trial court's removal of the jury during Sedler's cross-examination deprived him of his right to present a defense. We disagree.

"The authority and discretion afforded to trial courts to control the course of trial is, in fact, very broad." *People v Johnson*, 315 Mich App 163, 177; 889 NW2d 513 (2016). Examples of the trial court's authority include the ability to shackle an unruly defendant at trial, remove an uncooperative defendant from the courtroom for a period of time, permit jurors to ask the witnesses questions, and allow a witness's use of a support animal. *Id*. at 177-178 (citations and quotation marks omitted). However, the trial court's inherent authority to control the proceedings of its courtroom cannot infringe on a defendant's constitutional rights. *Id*. at 179.

Defendant asserts that the trial court's removal of the jury suggested to the jury that trial counsel had done something wrong; that assertion, however, is unsupported by the record. During the prosecution's direct-examination of Sedler, the trial court asked Sedler to speak more loudly, so that the jury could hear his testimony. Despite the trial court's instructions, Sedler continued to speak so quietly that the court recorder had difficulty hearing Sedler. At one point during the direct examination, the trial court took a brief recess to address Sedler's inability to speak loudly enough to be heard. Even after the recess, the trial court again had to tell Sedler to speak more loudly. During Sedler's cross-examination by defense trial counsel, defense counsel stated that he could not hear Sedler's testimony. The trial court noted for the record that it was difficult to hear Sedler's responses. The trial court took another brief recess and removed the jury to address Sedler's inability to speak loudly enough and instructed Sedler about the importance of speaking loudly so that a record could be made. Defendant claims that the trial court gave no explanation for removing the jury, and that this gave the jury the impression that defense counsel had done something wrong. However, the trial court instructed the jury that it would sometimes have discussions with the lawyers outside of their hearing, and, after the recess, told defense counsel that he could continue his line of questioning. Defendant has presented no evidence that the trial court remotely suggested to the jury that defense counsel had acted improperly; further, because a recess was called during both the prosecution's direct examination and defense counsel's cross-examination of Sedler, it is unlikely that the jury would draw such a conclusion from the mere fact that the cross-examination was interrupted. There is no evidence that the trial court infringed on defendant's constitutional rights or exceeded the scope of its authority to maintain the proceedings. *Johnson*, 315 Mich App at 177.

## D.  JURY INSTRUCTIONS

Defendant argues that the jury instructions given by the trial court were erroneous in certain respects, and that these errors denied him the right to present a defense.  "Instructional errors that directly affect a defendant's theory of defense can infringe a defendant's due[-]process right to present a defense." *People v Kurr*, 253 Mich App 317, 326-327; 654 NW2d 651 (2002). However, defendant did not object to the jury instructions as given or request a particular instruction before jury deliberations.  In fact, defendant affirmatively approved the jury instructions as read to the jury, and therefore waived any challenge to the jury instructions on appeal. *Carter*, 462 Mich at 216.[9]

## IV.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he was denied the effective assistance of counsel because his trial counsel (1) failed to call any character witnesses at trial, (2) failed to object to the scoring of defendant's sentencing guidelines; and (3) failed to request that the trial court instruct the jury that it was required to find that defendant possessed the intent to use his weapon unlawfully when he left his home or work to convict him of going armed with a dangerous weapon with unlawful intent.  We disagree that defendant's counsel was ineffective for failing to call character witnesses. We decline to address defendant's arguments concerning sentencing and jury instructions because we are vacating his conviction for going armed with a dangerous weapon with unlawful intent (the sentencing offense) for the reasons stated, and are therefore remanding for resentencing.

Whether effective assistance of counsel has been denied is a mixed question of fact and constitutional law.  *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).  This Court reviews questions of constitutional law de novo, and factual findings, if any, are reviewed for clear error. *Jordan*, 275 Mich App at 667.

Because defendant did not raise an ineffective-assistance claim in the trial court and this Court denied defendant's motion to remand, our review of this issue is limited to errors apparent

---

[9] We note, in any event, that although defendant takes issue with the jury instruction for Count II (felonious assault of Blumenauer), as having omitted that the element that defendant committed the assault with a handgun, he does not take issue with the earlier jury instruction for Count I (felonious assault of Sedler), which included the handgun element.  Since the conduct alleged (in relation to the two victims) was the same (as was defendant's defense), it is inconceivable that the jury could have convicted defendant of using a handgun to assault Sedler without also concluding that he had used a handgun in the assault of Blumenauer.  Consequently, the trial court's failure to repeat the handgun component when instructing on Count II was inconsequential.  Moreover, the jury instructions for each of the felony-firearm offenses instructed the jury that it was required to find that at the time defendant committed each predicate offense, he knowingly possessed or was armed with a handgun.  For these reasons, we conclude that the jury instructions on the whole did not infringe on defendant's ability to present a defense.  Therefore, even if defendant had not waived this challenge, we would not find plain error requiring reversal. *Carines*, 460 Mich at 763.

from the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). To establish ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant that he was denied the right to a fair trial. *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). Defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *People v Tommolino*, 187 Mich App 14, 17; 466 NW2d 315 (1991). To establish prejudice, defendant must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *People v Johnson*, 451 Mich 115, 124; 545 NW2d 637 (1996).

## A. CHARACTER WITNESSES

Defendant argues that trial counsel was ineffective in failing to call any character witnesses when defendant's character was called into question. We disagree. First, and although the prosecution argued that defendant was angry at the complainants during this specific incident, there is no evidence in the record that the prosecution placed defendant's character at issue such that witnesses should have been called to rebut claims that defendant was characteristically aggressive or confrontational. Further, defendant fails to provide any information about what the testimony of the character witnesses would have been or how their testimony would have benefited defendant's case, other than to state that they would have testified that he was not the "kind of guy to pull on gun on two strangers for giving him the finger." In any event, "[d]ecisions regarding whether to call or question a witness are presumed to be matters of trial strategy." *People v Putnam*, 309 Mich App 240, 248; 870 NW2d 593 (2015).

MRE 404 generally prohibits the admission of evidence of a person's character or character trait "to prove that on a particular occasion the person acted in accordance with the character or trait." However, MRE 404(a)(1) permits an accused to offer evidence of a "pertinent trait of character"; if the accused does so, the prosecution may seek to rebut that evidence. See *People v Roper*, 286 Mich App 77, 93; 77 NW2d 483 (2009). As our Supreme Court has noted, this "so-called 'mercy rule'" can be a risky proposition for a defendant. *People v Whitfield*, 425 Mich 116, 212; 388 NW2d 206 (1986). Because the prosecution is allowed to cross-examine defense character witnesses concerning specific instances of conduct by the accused, see MRE 405(a), as well as present its own witnesses "who testify to the bad reputation of the defendant," a defendant who chooses to offer character witnesses in support of his own good character may "unwittingly furnish the foundation for the prosecutor to acquaint the jury with matters which otherwise could not be admitted into evidence." *Whitfield*, 425 Mich at 212. Considering the risks of putting defendant's character in question, we cannot say that defendant has carried his burden of showing that defense counsel's choice not to offer character witnesses was not sound trial strategy. *Tommolino*, 187 Mich App at 17.

Further, even if defense counsel's decision not to call character witnesses was not sound trial strategy, defendant cannot demonstrate prejudice. Failure to call a witness only constitutes ineffective assistance of counsel when it deprives the defendant of a substantial defense. *Id*. "A substantial defense is one that could have affected the outcome of the trial." *Id*. Because character witnesses would not have been able to refute Sedler's or Blumenauer's testimony that they saw defendant point a gun at them, we do not find it more probable than not that the absence of character witnesses affected the outcome of trial. *Johnson*, 451 Mich at 124.

-10-

## B. JURY INSTRUCTION

Defendant also argues that his trial counsel was ineffective in failing to request that the trial court specifically instruct the jury, with regard to the going armed with a dangerous weapon with unlawful intent charge, that it had to find that defendant possessed the intent to use his weapon unlawfully when he left his home or place of employment. Because we are remanding for entry of a verdict of acquittal on the going armed with a dangerous weapon with unlawful intent charge, we decline to address this argument as moot. See *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010) (stating that "[a]n issue is moot if an event has occurred that renders it impossible for the court to grant relief" or "when a judgment, if entered, cannot for any reason have a practical legal effect on the existing controversy").

## C. SENTENCING GUIDELINES

Finally, defendant argues that trial counsel's failure to object to the scoring of his sentencing guidelines denied him the effective assistance of counsel. Defendant argues, and the prosecution agrees, that Prior Record Variable (PRV) 5 was incorrectly scored as calculated for defendant's conviction of going armed with a dangerous weapon with unlawful intent. We decline to address this argument because we are vacating that sentencing offense and remanding for resentencing. Defendant may challenge the accuracy of the scoring and calculation of his guidelines range at resentencing.[10]

## V. CONCLUSION

We vacate defendant's convictions and sentences for going armed with a dangerous weapon with unlawful intent and one count of felony-firearm, and remand this matter for entry of a verdict of acquittal on those charges. We affirm the remainder of defendant's convictions and remand for resentencing. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Mark T. Boonstra
/s/ Anica Letica

---

[10] We note that the presentence investigation report (PSIR) did not assess any points for PRV 5 in calculating the guidelines range for felonious assault.